UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED  DEC 21 2023
CLERK

| | |
|---|---|
| Georgia M. Hall, A Caregiver for Harry W Hall, Jr., Pro Se A Person with Disabilities, and a Traumatic Brain Injury (TBI) and Does unknown<br>Plaintiffs<br><br>Vs<br><br>Livingston Parish Government as a unit Layton Ricks, Individually and President Jeff Ard, individually, District 1 Garry Talbert, individually, District 2 Maurice "Scooter" Keen, Individually, District 3 John Wascom, individually, District 4 Erin Sandefur, individually, District 5 Gerald McMorris, individually, District 6 Tracy Girlinghouse, individually, District 7 Randy Delatte, individually, District 8 Shane Mack. Individually, District 9 Sam Digirolamo, individually, Director of Public Works, and Does unknown<br>Defendants | COMPLAINT FOR VIOLATION OF CIVIL RIGHTS<br>Constitution 14th Amendment, Laws of the United States, U S Civil Rights, Title 18, Sec 242, Laws of the U S, The State of Louisiana , the Americans with Disabilities Act Title II, Rehabilitation Act, Voters Rights Act, Older Americans Act 1965, the Livingston Parish second Amended Home Rule Charter, and the Livingston Parish Code of Ordinances.<br><br><br><br>Case #_____ |

---

Did the Public Officials violate their Oath of Office when they neither Supported nor obeyed the Ordinances or Federal Laws which should protect individuals with disabilities and a Traumatic Brain Injury (TBI) under the Americans with Disabilities Act (ADA) and Law of 1983?

---

## Table of Contents

                                                                   **PAGE**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

ALL ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED . . . .   3

FIRST RELIEF: DEPRIVATION OF CIVIL RIGHTS ACTING UNDER THE
COLOR OF ANY LAWS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

SECOND RELIEF: THE PARISH CODE CHAPTER 58-ROADS AND
DRAINAGE . . . . . . . . . . . . . . . . . . .. . . . .. .. . .. . . . . .. .. . . .   6

THIRD RELIEF: DENIED HELP FROM PUBLIC OFFICIALS . . . . . . .   7

FOURTH RELIEF: STATE AND LOCAL ETHICS AND OATH OF OFFICE . .   9

FIFTH RELIEF: OLDER AMERICANS ACT

AMERICANS WITH DISABILITIES ACT . . . . . . . . . . . . . . . . .   11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

REQUEST FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . .   I

EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   III

# INTRODUCTION

1. The single intent of this lawsuit is to compel the defendants as public officers to obey the Law of the Constitution, Laws of the U S, State Laws, the Livingston Parish Second Amended Home Rule Charter ( Parish Charter) and the Livingston Parish Code of Ordinances (Parish Code) (LAWS) . This Lawsuit is brought before the Federal Court because the Parish Government has intentionally refused, and continues to refuse to fulfill a duty to install a cul-de-sac according to Parish Code *Article I Sec 58-10*[1] while acting under the color of any law (*U S Title 18, Section 242*[2] thus causing harm of mental anguish as the defendants continue to incarcerate and isolate a person with disabilities and a TBI.

2. The plaintiff was declared a person with a permanent total disability at the age of fifty-three (53) on July 26, 2000. And approximately 2002, he was diagnosed a person with a TBI and received his Social Security Disability upon his first application.

3. The first material fact that must be asserted is the Edna Kinchen Road Right of Way (ROW Agreement) (Exh. A: ROW Agreement p.1): , First segment, is a dead-end road, longer than 600 feet and is missing a cul-de-sac. (Parish Code: Chapter 58, Article 1, Sec 58-10)

---

[1] Code: Chapter 58 – Roads and Drainage; Article 1, in General  Sec 58-10 Cul-de-sacs: All dead-end streets or roads over six hundred (600') feet long are to have a turn-around suitable in size to accommodate a school bus (code 1983, § 14-10; Res of 7-22 –1978).

[2] Title 18, Section 242: Whoever acting under the color of any law…willfully subjects any…. person in any State…to the deprivation of any right …protected by any law …shall be fined under this title or imprisoned…

1

4. The second material fact, that can not be disputed, is the public entities violation of "sec 58:10" for the cul-de-sac. It can only be surmised as a failure to obey the LAWS, and a complete disregard of the plaintiff's civil rights as a person with disabilities and a TBI. (*State v Passman 391 So2d 1140 (1980)*

5. The public officials violated the ADA by denying an individual access to community services, when they allowed a road listed on the parish road maintenance system (Parish road) to become a discriminatory barrier that blocks: 1) the United States Postal Service Mail delivery, 2) the voting rights for using the mail-in ballot, 3) the access to community services, 4) the Livingston Council on Aging's (LCOA) transportation bus, 5) the contracted trash and garbage pickup and disposal.

6. Hall claims the public entities have continued their insubordination to deny his right to vote by mail-in ballot. After two complaints to the Washington D.C. U.S.P.S., a special waiver was approved to install a mailbox January 2023. Georgia Hall (Caregiver) called Becky Hoyt, Holden postmaster[3], who explained the special waiver. The Caregiver had the mailbox installed and inspected by the mail carrier. Hall voted for the first time in three (3) years on March 23, 2023 (Exh: H  Becky Hoyt letter denying mailbox in 2021)

## JURISDICTION

7. The Federal Court must take this case, as the plaintiff has a fundamental right, 1) to petition the court, 2) for this court to scrutinize the defendants conduct, actions, and Omissions and 3) to determine if such actions violated the plaintiff's Equal Protection Clause of the fourteenth (14th) Amendment.

---

[3] Becky Hoyt , Holden, La Postmaster, phone # 225-209-9201, email: Becky.R,Hoyt@usps.gov

2

8. The Court has jurisdiction because the defendants' conduct, actions and omissions causing this case, occurred in the Middle District of Louisiana and the Parish of Livingston pursuant to 28 U.S.C. § 1391. Therefore, the venue is proper in the U S District Court Middle District of Louisiana

9. 42 U.S.C. § 1213 allows the Court to grant the relief sought in this case pursuant to 28 U.S.C. §§ 2201-02

10. A person with a disability must not be burdened with the chore and expense to file a case in court to force public entities to obey the Laws.

**ALL ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED**

11. What happened to the public officers copy of the ROW agreement? Does the public officers have the required ROW for all listed parish roads?

12. The Caregiver, wrote a number of complaints to the Federal representatives, the State representatives and a number of agencies. The ROW agreement required by the public entities was provided, accepted and signed by President Clarence O'Neal of the Parish Police Jury in 1977 and recorded in the Livingston Parish Clerk of Courts Office. The caregiver had to obtain a copy of the ROW agreement for the council's office before being put on the March 2018 council agenda by Shane Mack (Mack). President Layton Ricks (Ricks) and Sam Digirolamo (Digirolamo), director of the public works were at the council meeting. Both Digirolamo and Randy Delatte were on the First elected Parish Council for the new Livingston Parish Home Rule Charter.

13. It has been five years since the caregiver addressed the council. The public entity's actions and conduct can only be interpreted as willful and intentional as the required cul-de-sac for the dead end road is still missing.

3

14. The Caregiver contacted U S Representative Garret Graves' office in Washington D.C. and spoke with Alex Erwin[4]. The complaint was given to his liaison, Dalton Peterson[5] (Peterson), located in Baton Rouge, La. Peterson, contacted the council's legal advisor and received an email in response, which Peterson forwarded to the caregiver. (Exh. D: Email Dalton Peterson)

15. CHARTER: Article III, Executive Branch; Sec 3-9. Powers and Duties of the president. A. The president as chief executive officer of the parish government shall have the following powers and duties; (1) See that all laws, provisions of this charter and acts of the council, subject to the president's direction and supervision are faithfully executed.

16. CHARTER: Article IV.. Administration, Sec 4-02 Legal Department. A. The district attorney of the Judicial District serving Livingston Parish shall serve as legal adviser to the council, president, and all departments, offices, and agencies and represent the Parish government in legal proceedings.

17. CHARTER: Article IV; Administration Sec 4.04 Public Works Department, B. the director of the public works department shall direct and be responsible for certain items which shall include activities as may be directed by the president.

18. Black's Law Dictionary 2nd addition defines "REFUSAL" as:

> The act of one who has, by law, a right and power of having or doing something of advantage, and declines it. Also, the declination of a request or demand, or the Omission to comply with some requirement of law, as the result of a positive intention to disobey.

---

[4] Alex Erwin: U S Representative Garret Graves' Director of Operations (LA-06) phone #202-225-3901. ;
  Email: Alex.Erin@mail.house.gov
[5] Dalton Peterson: U S Representative Garret Graves' Baton Rouge La office Liaison. Phone # 225-442-1731

4

## FIRST RELIEF: DEPRIVATION OF CIVIL RIGHTS ACTING UNDER THE COLOR OF ANY LAWS

19. All government officials and agencies must comply with U S Title 18, Section 242: Acting under the color of any law.

20. Fourteen.four (14.4) percent or 20,489 of the residents of Livingston Parish are Older Americans over the age of 65 according to the census of 2020. Many of the older Americans may need help getting dressed because of a disability and their quality of life challenges, caused by various injuries or other medical ailments such as severe arthritis.

21. Eight.one (8.1) percent or 11,525 of Livingston Parish Residents are registered as a person with physical disabilities from the age of 65 and younger according to the 2020 census. Just like Hall, many are unnecessarily segregated or at risk of being isolated due to the inaction of the public entities to make community services accessible to them.

22. In the 2020 census, Livingston Parish had a population of 142,282 residents. Therefore, 31,994 of the residents of Livingston Parish are protected by the ADA Title II, Sec 504 of the RA, the law of 1983 and the OAA and need relief from being isolated and segregated by defendants violating their federal civil rights, acting under the Color of any law.

23. Hall claims the public entities continue to treat the plaintiff of a protected activity with a deliberate indifference. The defendants retaliation toward the plaintiff is obvious by the continuous misconduct as a unit and individually by not faithfully supporting the Laws they swore to uphold.

24. Hall lives in rural Livingston Parish on a dead-end road more than 600 feet long that does not have the required cul-de-sac for a Parish Road. The

defendants Omission of the cul-de-sac violates Hall's civil rights, and clearly proves the public entities violation of Federal and State Laws, and the defendants Oath of Office, (42 *USC SEC 12132[6])*

25. Hall is a citizen of the United States and a person with disabilities and a TBI. If the defendants are depriving Hall of his Federally protected rights; How many of the other 31,000 listed in the 2020 census are being deprived?

## SECOND RELIEF: THE PARISH CODE CHAPTER 58-ROADS AND DRAINAGE

26. Hall claims the public entities are depriving him of his civil rights acting Under the Color of any Law as they refuse to construct a cul-de-sac and drainage

27. Hall acknowledges, when a parish or state provides services to people with disabilities, it must provide those services in the most integrated setting appropriate to recipients needs without altering its service system. But the plaintiffs and others must be protected under the constitution and by the state and local laws when elected officials refuse to obey the laws to protect the people.. U S. TITLE 18 Section 245:[7]

28. The ROW agreement is dated 1977. The road name was changed by Home Land Security to Cockerham Road East in 2001 to remove identical road names for emergency reasons. In 2006, the caregiver requested a name change, because Cockerham Road West (West) is in Denham Springs, La.

---

[6] 42 USC SEC 12132 No ADA protected Individual can Be subjected to discrimination by any public entity.
[7] U S. TITLE 18 Section 245: 1.) Federally Protected  a. a voter or a person registering to vote.   e. Participant in any program or activity receiving Federal financial assistance.   2)  b.  A participant in any benefit, service, privilege, program, facility, or activity  provided or administered by a state or local government.

West became a Louisiana State road, and the word 'West" was permanently dropped, which caused a 911 emergency situation for Hall.

29. The Elected officials requires a ROW be signed over to the parish with mineral rights before it will be accepted as a parish road. The parish road to Hall's residence exceeded the Parish Code in 1977, but today it barely meets the new road requirements for the "Type D road" [8]. (Exh Thomas Johnson Email to Digirolamo[9])

30. The evidence presented is very clear that Hall's civil rights are being violated by the defendants or public entities as they continually violate their Oath of office. The installation of the U.S. mailbox to receive the mail-in ballot to vote required a special waiver from Washington D.C U.S.P.S. because the defendants continue to ignore the plaintiff's civil Rights and the LAW.

31. Hall does not have garbage and trash pick up, neither does he have the LCOA bus or access to community services. AG opinion No. 12-0128; The parish may not abandon its maintenance of the road.[10]

32. The public entities have and continue to misuse their authority by deliberately and willfully depriving the plaintiff's right to vote as they violate their duties, and the LAWS. The parish road needs a cul-de-sac and ditches to drain water from over flowing the road. Hall especially needs a smooth surface to relieve the additional pain caused by the four-wheelers, log trucks, and machinery causing multiple ruts in the Parish road.

---

[8] CODE: Sec 58-6.1, (a) Type D streets or roads, (3), One (1) of the following three (3) public services must use the road: a. United States Postal Service; b Garbage Service; c. school bus service. (LPO 20-20, 8-13-2020)
[9] Thomas Johnson, Project Manager, phone # 225-665-1515, email, tjohnson@afa-ds.com
[10] AG Op, No.12-0128; Once a parish maintains a road for more than three years with the knowledge of the private owner, that road is considered a public road and becomes a part of the parish road system. The parish may not abandon its maintenance of the road.

7

## THIRD RELIEF: DENIED HELP FROM PUBLIC OFFICIALS.

33. On September 28, 2023, the caregiver sent an email to her council member, Shane Mack, District 9, who is also the chairman of the Ordinance committee. The email questioned if the missing cul-de-sac could be installed at the end of the portion of the road that the defendants employees grade into Weyerhaeuser property. ( Exh. E: email Shane Mack)

34. The Caregiver had spoken with Howard McClinton (McClinton), Weyerhaeuser Hammond Manager[11] about allowing a cul-de-sac where the grader always turns around. McClinton said no one had contacted him concerning the matter.

35. On September 30, 2023, Mack's reply email requested Christopher Moody[12] (Moody) legal advisor and Digirolamo to contact McClinton to see if a cul-de-sac could be constructed. Mack's failure to contact McClinton proves his Oath of Office to support the LAWS and duties are not important and shows his willful disregard for a person with a disability and a TBI. (Exh E: EMAIL)

36. On October 5, 2023 and again on November 16, 2023 the caregiver contacted McClinton concerning the meeting with Moody and Digirolamo. Neither Moody, Digirolamo nor Mack had contacted him about a meeting. (Exh

---

No. 12-0128 [11]HOWARD MCCLINTON, Weyerhaeuser Hammond Manager, phone # 985-500-3047. Email: howard.mcclinton@wy.com
[12] Christopher Moody Parish charter Legal advisor: phone # 985-542-1351; Email: cmoody@cmoodylaw.com

8

## FOURTH RELIEF: STATE AND LOCAL ETHICS AND OATH OF OFFICE

37. Title 42, Public Officers And Employees: Chapter 15. Code of Governmental Ethics  Part I General Provision; Sec 1101. Declaration of Policy.[13]

38. The State of Louisiana Constitution Article X. Section 21 of the Louisiana Constitution mandates that the Legislature enact a code of ethics for officials and employees of the state and its political subdivisions, LSC R.S. 1101[14]

39. The Parish Charter states : Article VII General Provisions Sec 7-02. – code of ethics[15] as explained in  La. R.S. Section 14:126 inconsistent statements, false swearing.

40. Public entities, who failed to obey the Parish Charter, failed to establish appropriate ethical standards regarding elected officials, and who failed to support the constitution are not protecting voters, or participants in federally and state funded community services.

41. The ADA requires public entities with more than fifty employees to have an appropriate ADA coordinator with procedures on how to file a

---

[13] Title 42, Public Officers And Employees:  Chapter 15. Code of Governmental Ethics:   It is essential to the proper operation of democratic government that elected officials and public employees be independent and impartial:.. The public interest, therefore, requires the Law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service.  It is the purpose of this Chapter to Implement these policies and objectives.  Acts 1979, No. 443, sec 1, .

[14] LSC R.S. 42 1101 Code of Governmental Ethics

[15] CHARTER: Article VII General Provisions Sec 7-02. – code of ethics. All Officers, officials and employees of the parish government shall be subject to provisions of the state code of ethics pertaining to local governments.

9

complaint against public entities and employees. The Parish Government does not obey this requirement (28 C.F.R. Sec 35.107(a))  (*28 C.F.R. Sec 35.107(b)* )  (28 C.F.R. Sec 35.150;)

42. The defendants discriminated when they neglected to establish an ADA coordinator to take complaints against elected officials and public employees. But created a Compliance Department in 2017 to enforce the Parish Code while acting under the color of any law.

43. The parish website states:  (www.livingstonparishla,gov/compliance)

> Code compliance ensures that Livingston Parish regulations are enforced consistently and equitably....If this effort is not successful, fines may be levied and/or criminal/civil action may be instituted.

44. The Caregiver tried to file a complaint against the public entity with the Compliance Department. It is apparent the compliance department officers do not have jurisdiction to take complaints against the elected officials or appointed employees.  The Parish Compliance Department can only be an illegal action by the public entities.

45. The defendants actions and conduct proves the lack of concern for any violation of the Oath of Office and/or the Constitution. The defendants violations prove their discrimination of the ADA, the OAA, and the VRA, and Hall's civil rights. The defendants violations should be enforced by the court in the same manner as the defendants enforcement stated on their compliance department website:

> "fines may be levied and/or criminal/civil action may be instituted."

46. The defendants injustice has caused Hall mental anguish, isolation, segregation, loneliness and despair by public entities as an individual and/or

as a unit by violating the Constitution, their Oath of Office, and the Ethic Laws. (18 U S C 1918 and the penalties are described in 5 U S C 77311) .

## FIFTH RELIEF: OLDER AMERICANS ACT.

## AMERICANS WITH DISABILITIES ACT

47. Why is the only accessible road to Hall's property not maintained with a cul-de-sac as required by the Parish Code?.

48. The ADA recognized that society and in this case, the parish government, has discriminated against people with disabilities by isolation and segregating them from community services, activities, family and friends.

49. The defendants are violating the OAA passed by Congress in 1965, and President Biden extended on March 20, 2020 until 2025. The public officials are violating the residents civil rights, as they violate the law requirements for state and local governments

50. There is absolutely no rational motive for elected officials to deny the plaintiff access to community services except discrimination. The defendants inadequacy to maintain roads and drainage on the Parish road is pure refusal and causes harm by various kinds of barriers to community services.

51. The defendants failure to carry out their duties and provide access to Hall's property denies him the benefits of Governmental services

52. The defendants' discriminate as the contracted garbage and trash pick up and disposal is not accessible to all as the public entities continually refuse to abide by the ROW agreement and stipulated requirements.

53. It is the public entities conduct and actions of continued deliberate indifference that affects many of the services funded by the state, the federal government and the grants. (

## CONCLUSION

Therefore, unless the Parish Government is ordered to comply with its own ordinances, their actions and conduct will continue to affect not only the plaintiffs but other persons with disabilities and older Americans protected by the ADA or the OAA. The public entities have not upheld the Oath of Office And by this case can be removed from office according to the Parish Charter[16] . The council and the president took an oath and swore to faithfully and impartially support the Constitution and the Laws of the United States; the Laws of the State and the Parish Charter and the Parish Code. Hall claims that by violating his civil rights, and the LAWS, the public entities act of omissions is deliberate and cruel which causes him and others to continually be Isolated and segregated.

## REQUEST FOR RELIEF

Under 42 U.S.C. § 12133.

The Court may grant the relief sought in this action pursuant to

28 U.S.C. §§ 2201-02.

The Plaintiffs respectfully request that the Court

(A).   Grant judgement in favor of the plaintiffs and

---

[16] CHARTER: ARTICLE VI- SEC 6.03 Removal from office: Any official of the parish government may be removed from office by court suit as provided for in the constitution and general laws of the stste.

12

(B)   Take steps as may be necessary to prevent any future reoccurrence of the discriminating conduct and

(C)   Order the public entities to cease with the Compliance Dept until the ADA coordinator is hired and the complaint procedures are in place to end the impact of the Defendants' unlawful actions of violating its oath, State Ethic Laws and the constitution

(D)   Sanction the Parish officials for violating the Oath of Office as their actions and Omissions violated the plaintiff's civil rights to vote.

(E)   Order defendants to pay court cost and expenses.

(F)   Order the Parish Government and its Departments to restore the parish road leading to the Hall's property to a code type "A" with the required cul-de-sac.

(G)   Order the parish government to comply with the ADA requirements to provide an ADA coordinator position and a complaint procedure on the government website.

(H)   Order other appropriate remedies as the interest of justice may require.

We hereby certify under penalty of perjury that the above petition is true to the best of our information, knowledge, and belief.

Dated December 21, 2023

Georgia Hall, Caregiver for Harry W Hall Jr. Pro Se.

*Georgia Hall*     *Harry Whatt*

13

30800 Boondocking Road

Holden, La. 70744

920 309 2847

Please2listen@gmail.com

14